UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

            vs.

CLIFFORD TAYLOR,

            Defendant.
_____

Case No. 19-Cr-410 (KPF)

# DEFENDANT CLIFFORD TAYLOR'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS PHYSICAL EVIDENCE

FLORIAN MIEDEL, ESQ.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004
Tel: (212) 616-3042

*Attorney for Clifford Taylor*

## I.     PRELIMINARY STATEMENT

On October 17, 2019, Clifford Taylor submitted his Memorandum of Law in support of his pre-trial motion to suppress physical evidence recovered during a search of his home on February 22, 2019 by New York State Parole officers, assisted by New York City Police Department officers, because the search violated Mr. Taylor's rights protected by the Fourth Amendment of the United States Constitution.

On November 15, 2019, the government filed a memorandum in opposition, supported by an affidavit executed by Parole Officer Andre Logan.  The government argued that parole officers had reasonable suspicion to conduct a search of Mr. Taylor's apartment on February 22, 2019, because they had obtained a tip from New York City Police Department Lieutenant Alberys Garcia the day before, indicating that Mr. Taylor kept a gun inside of a trap door in a closet.  *See* Govt. Opposition at 4.  According to Parole Officer Logan, as related to him by Lt. Garcia, the information came from an individual who had been inside of Mr. Taylor's apartment.  *See id.*  Based on this information, the government asserted that "the parole search was reasonably related to the parole officers' duties without any violation of the Fourth Amendment."  *Id.* at 10.

## II.     ARGUMENT

### The Court Should Hold an Evidentiary Hearing

The government argues that the affidavit by Parole Officer Logan, in which he asserts that NYPD Lt. Garcia provided him with information that Mr. Taylor possessed a gun inside of a trap in a closet, is sufficient to overcome Mr. Taylor's diminished expectation of privacy in his home as a parolee.  And indeed, a specific and reliable tip about new criminal conduct can

constitute reasonable suspicion to allow a parolee's home or person to be searched without a warrant. *See e.g. United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012); *United States v. Quinones*, 457 F. App'x 68, 70 (2d Cir. 2012); *United States v. Patterson*, 2013 WL 592657, at *1–2 (S.D.N.Y. Feb. 14, 2013).

Here, however, the Court should conduct an evidentiary hearing to flush out the facts surrounding the alleged tip addressed in Parole Officer's affidavit, for two reasons. First, Parole Officer Logan's prior sworn testimony about the reasons for the search of Mr. Taylor's apartment raises questions about the accuracy, and, perhaps, veracity of his affidavit, and his general credibility. Officer Logan should therefore be required to provide a further explanation, under oath and subject to cross-examination, about the reasons for why Mr. Taylor's apartment was searched on February 22, 2019. Second, the description of the tip in the affidavit is insufficiently specific to establish reasonable suspicion to conduct a warrantless search. Accordingly, an evidentiary hearing should be held on December 9, 2019.

### A. Parole Officer Logan's prior testimony about the reasons for the search of Mr. Taylor's apartment raise questions about the veracity of his affidavit and his credibility

Prior to executing the affidavit submitted by the government to support its opposition to Mr. Taylor's motion, Parole Officer Logan testified at least twice under oath about the circumstances of the parole search of Mr. Taylor's apartment on February 22, 2019. First, he testified before a Bronx Grand Jury on February 27, 2019, and provided the following answer to a question by a Bronx County Assistant District Attorney:

> Q;   Why were you at that location?
>
> A.:  On that date and time, I was there due to an unannounced home visit and home inspection.

Logan Grand Jury Excerpt, USAO _00082-83, Exhibit D.[1]

While that answer may have been cleverly vague – as is the legalistic and misleading language in the federal complaint about the reason for the search ("conducted an unannounced search of Apartment-1 *pursuant to the conditions of Taylor's supervised release*")[2] – Officer Logan's testimony at Mr. Taylor's preliminary parole revocation hearing was more explicit, and more problematic. At the revocation hearing, which took place on March 7, 2019, Officer Logan testified as follows about the reasons for the search:

> Pursuant to that home visit and subsequent to that home visit an inspection of Mr. Clifford Taylor's residence was done based on the history and prior, while on, *while on parole supervision a prior incident where contraband was found at the residence.* So that was the back drop of us doing that home visit.

Logan Parole Revocation Transcript at 6, Exhibit E (emphasis added). On cross examination, Officer Logan reiterated that basis for the search: "Searches, history of being able to search his residences and prior history of being able to search his residence and *what was located during the prior search.*" *Id.* at 15 (emphasis added). Upon the hearing officer's question, "He already said that he found stuff before, is that correct?, Officer Logan answered, "Correct." *Id.* at 16. *See also id.* at 18 (Preliminary Hearing Officer: "I thought he said they based it on the fact that they found contraband there before. Did you not say that?" Parole Office Logan: "Yes ma'am."). After repeated pushing by Mr. Taylor's attorney, the hearing officer eventually elicited the following additional information:

> Q.:   Was there a tip, yes or no, and ten[sic] after that we are not answering, we're not going into any more detail on this.
>
> A.:   Some information was received.

---

[1] Only the pages of the grand jury transcript relating to the relevant question are attached as Exhibit D. The entire transcript is, however, available for the Court's review upon request.

[2] Criminal Complaint, at 3, Exhibit A to Memorandum in Support of Motion to Suppress (emphasis added).

*Id.* at 18-19.

Notwithstanding this last answer, Parole Officer Logan's testimony, under oath, was that the search was conducted because on a previous occasion contraband had been found in Mr. Taylor's residence. *See id.* at 6, 15, 16. That testimony does not appear to be true, however. Officer Logan testified that he had been Mr. Taylor's Parole Officer since Mr. Taylor's release from prison in March 2018. *See id.* at 12. The Parole Chronological File provided by the government in discovery shows that from the time of Parole Officer Logan's assignment to supervise Mr. Taylor's upon his release in February 2018, Mr. Taylor was not found with contraband, and did not, in fact, violate any conditions of his parole. *See* Parole Chronological File, USAO _ 242-247, Exhibit F.

In light of Officer Logan's testimony at the parole revocation hearing, in which he provided a seemingly fictitious reason as the basis for the search, his subsequent affidavit that the *real* reason for the search was information he had received from NYPD warrants further exploration and inquiry. Accordingly, the Court should conduct an evidentiary hearing.

### B. Officer Logan's description of the information provided is insufficiently specific to establish reasonable suspicion

"Reasonable suspicion" arises when law enforcement officers are "aware of specific facts, together with rational inferences from those facts, that reasonably warrant suspicion." *United States v. Brignoni–Ponce*, 422 U.S. 873, 884 (1975). Reasonable suspicion must be "based on specific and articulable facts" and not on "inchoate suspicion or mere hunch." *United States v. Bayless*, 201 F.3d 116, 132–33 (2d Cir.2000) (internal quotation marks omitted). Courts will "look at the totality of the circumstances of each case to see whether the detaining officer has a

particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, Officer Logan's affidavit states that Lt. Garcia from the Police Department told him that a source who had been inside Mr. Taylor's apartment had revealed that a gun was located inside of a trap in a closet in the apartment. Officer Logan does not state whether the tip Lt. Garcia received was anonymous or came from a known, reliable, informant. Indeed, Officer Logan's affidavit says nothing further about the source of the information.

Officer Logan's affidavit is insufficiently specific to establish reasonable suspicion. If, for example, the tip was anonymous, reasonable suspicion would not exist because Parole Officer Logan possessed no confirmatory information to corroborate the anonymous tip. *See e.g. United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) ("Anonymous tips, without further corroboration by the police to demonstrate that the tip has sufficient indicia of reliability, are insufficient to provide the reasonable suspicion…") (internal citations omitted).

Accordingly, the lack of specify of the alleged tip described in Parole Officer Logan's affidavit requires further factual exploration at an evidentiary hearing. In order for the Court to determine whether the parole search "was rationally and reasonably related to the performance of the parole officer's duty" (*United States v. Grimes*, 225 F.3d 254, 258 (2d Cir.2000)), Parole Officer Logan and Police Lt. Garcia should testify about the alleged source of information, if it exists, and its reliability.[3]

---

[3] The Court should also permit exploration at a hearing of the relationship between the NYPD and the Parole Officers who participated in the search. It is curious that the alleged "tip" came from Lt. Garcia, who, along with other NYPD officers, then accompanied parole officers to Mr. Taylor's apartment and waited outside while the search took place. The totality of the circumstances suggest that police officers lacked probable cause to obtain a search warrant themselves, and therefore used Mr. Taylor's parole status to circumvent the warrant requirement, a tactic that is improper under New York law. *See e.g. People v. Escalera*, 121 A.D.3d 1519, 1520 (4th Dept. 2014) ("A parole officer's search is unlawful, however, when the parole officer is merely a conduit for doing what the police could not do otherwise. Stated differently, a parolee's status ought not to be exploited to allow a search which is designed solely

### III.   CONCLUSION

For all the foregoing reasons, Clifford Taylor respectfully requests that the Court grant the relief he seeks herein, or any relief the Court deems just and proper.

Dated: New York, New York
       November 27, 2019

                                          Respectfully Submitted

                       By:

                                       */s/ Florian Miedel*
                                       Florian Miedel, Esq.
                                       MIEDEL & MYSLIWIEC LLP
                                       80 Broad Street, Suite 1900
                                       New York, NY 10004

                                       *Counsel for Clifford Taylor*

---

to collect contraband or evidence in aid of the prosecution of an independent criminal investigation."). (Internal citations and quotation marks omitted). Although the "stalking horse" theory has been rejected in the Second Circuit as a basis for suppression, *see United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002), further exploration of this topic would shed light on Parole Officer Logan's credibility.