UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

CLIFFORD TAYLOR,

Defendant.

19 Cr. 410 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

While on parole for a state controlled substances offense, Clifford Taylor stored both narcotics and firearms behind a false wall in a closet in his apartment until they were discovered by parole officers during a search. After this Court denied his motion to suppress this evidence, Taylor pleaded guilty to unlawfully possessing with the intent to distribute fentanyl, in violation of the federal controlled substances laws. Taylor was then sentenced principally to a term of 84 months' imprisonment. Though Taylor did not appeal from his conviction or sentence, he has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming constitutional violations in connection with his prosecution and guilty plea. For the reasons set forth in the remainder of this Opinion, the Court denies Taylor's Section 2255 motion, though it grants his request to correct certain clerical errors in his Presentence Investigation Report (or "PSR") and his written judgment.

## BACKGROUND[1]

### A.    Factual Background

As a result of a 2016 conviction in New York State Supreme Court for attempted criminal possession of a controlled substance in the third degree, Clifford Taylor was on parole as of February 2019.  (PSR ¶ 13).  As part of his conditions of parole, Taylor was obligated to inform his supervising parole officer, André Logan, of his residence and to allow visits at that residence.  (*Id.* ¶¶ 14-15).  On February 21, 2019, Officer Logan was informed by the New York City Police Department (the "NYPD") that it had received a confidential tip that Taylor possessed a firearm hidden behind a trap door in a closet of his apartment.  (*Id.* ¶ 16).  In consequence, Officer Logan and several other parole officers conducted a parole search of Taylor's apartment, while NYPD officers remained outside of the apartment to provide security.  (*Id.* ¶ 17).  During the search, parole officers located a false wall in the back of a closet in the living room, behind which were shelves containing controlled substances and paraphernalia, including what was later determined to be over 500 grams of substances containing fentanyl; 133 tablets containing fentanyl; over 100 grams of cocaine; over 200 grams of marijuana; an electric grinder; a hydraulic

---

[1]    References to docket entries in this Opinion pertain to the docket in the criminal case, *United States* v. *Taylor*, No. 19 Cr. 410 (KPF).  Taylor's Final Presentence Investigation Report is referred to as the "PSR" (Dkt. #169); his suppression hearing transcript as "Supp. Tr." (Dkt. #25); the Court's suppression decision transcript as "Supp. Op." (Dkt. #27); Taylor's plea transcript as "Plea Tr." (Dkt. #201-2); his sentencing transcript as "Sent. Tr." (Dkt. #176); his opening brief in support of his Section 2255 motion as "Def. Br." (Dkt. #192); his supplemental brief as "Def. Supp. Br." (Dkt. #200); the Government's brief in opposition as "Gov't Opp." (Dkt. #201); and Taylor's reply brief as "Def. Reply" (Dkt. #208).

press; a respirator mask; mixing agents; and over $10,000 in cash.  (*Id.* ¶¶ 18-19).  What is more, officers discovered a false floor in the same closet, under which parole officers recovered two firearms and ammunition.  (*Id.* ¶ 19).  Taylor was arrested by the NYPD that same day.

## B.     Procedural Background

### 1.     The Complaint and the Indictment

On May 3, 2019, a criminal complaint was filed against Taylor in this District, charging him with federal firearms and controlled substances offenses.  (Dkt. #1).  Taylor was arrested on that complaint on May 22, 2019, and presented before Magistrate Judge Debra Freeman.  (Dkt. #3-4).  On June 4, 2019, a grand jury returned an indictment against Taylor (the "Indictment" (Dkt. #8)), charging him with possession of fentanyl with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count One); possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); possession of a firearm after sustaining a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Three); and possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(a)(i) (Count Four).

### 2.     The Motion to Suppress

Taylor filed a motion to suppress the evidence discovered during the search of his apartment, arguing that the search "did not appear to have been 'reasonably related' to the parole officers' duty," as required by law.  (Dkt. #20 at 6; *see also id.* at 7 ("Without some kind of specific, credible, information

leading to the suspicion that Mr. Taylor was hiding contraband inside of his apartment or was engaged in criminal conduct, the parole officers' intrusive search of containers, drawers, and closets within the sanctity of Mr. Taylor's home violated his Fourth Amendment rights — even his diminished rights as a parolee — because the invasive search was not rationally and reasonably related to the officers' duty as parole officers.")).[2]  A hearing was held on Taylor's motion on December 9, 2019 (Supp. Tr.), and oral argument was held on December 13, 2019, after which the Court issued an oral decision denying the motion (Supp. Op.).  As relevant here, the Court found that Parole Officer André Logan had received credible information from NYPD Lieutenant Alvarice Garcia, who in turn had received the information from a confidential source,

---

[2]     *See generally United States* v. *Brown*, No. 22 Cr. 266 (PGG), 2023 WL 208171, at *3 (S.D.N.Y. Jan. 13, 2023):

> While "a parolee's home, 'like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable,'" *United States* v. *Braggs*, 5 F.4th 183, 186 (2d Cir. 2021) (quoting *Griffin* v. *Wisconsin*, 483 U.S. 868, 873 (1987)), "parolees have severely diminished privacy expectations by virtue of their status alone." *Samson* v. *California*, 547 U.S. 843, 844 (2006). Thus, "[u]nder the Special Needs Doctrine, a parole officer may search a parolee so long as the search is reasonably related to the performance of the officer's duties." *Braggs*, 5 F.4th at 184, 186; *United States* v. *Barner*, 666 F.3d 79, 84 (2d Cir. 2012) ("[T]he determination as to whether a warrantless parole search 'was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty.'" (quoting *People* v. *Huntley*, 371 N.E.2d 794, 797 (N.Y. 1977))). "Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that 'the community is not harmed by the [parolee's] being at large.'" *Braggs*, 5 F.4th at 187 (quoting *Griffin*, 483 U.S. at 875) (alteration in *Braggs*).  In this regard, the Second Circuit has ruled that a parole officer's search of a parolee's home after receiving "an anonymous tip suggesting that [the parolee] had guns in his possession — a clear violation of his parole conditions — ... [is] constitutionally permitted." (*Id.* at 188).

that Taylor possessed a firearm inside his apartment inside a trap door inside a closet located in the apartment.  (Supp. Op. 31-33).  Further, after evaluating the testimony of the witnesses, the Court concluded that

> the search was rationally and reasonably related to the performance of the probation officers['] duties, because of the information about the confidential source.  I therefore do not need to get into the issue of whether the [*Samson*] construct would apply, whether the Second Circuit would need to resort to it because here, too, it would seem that under the pre-[*Samson*]/*Huntley* regime, it would suffice to demonstrate a basis for the search.

(*Id.* at 33).  Conversely, the Court specifically declined to find that the parole officers operated as a mere "stalking horse" for the NYPD.  (*Id.* at 34).

### 3.    The Guilty Plea

After the Court denied the motion to suppress, the parties requested time to discuss the possibility of a pretrial resolution.  (*See, e.g.*, Dkt. #28 (consent request for adjournment of pretrial conference)).  These negotiations, however, were complicated by the onset of the COVID-19 pandemic in March 2020, which prompted an emergency defense motion that month to release Taylor from pretrial detention.  (*See* Dkt. #30-34).  After several telephonic conferences with the parties (*see, e.g.*, Dkt. #34, 38), and numerous written submissions (*see, e.g.*, Dkt. #40-46), the Court ordered Taylor's release on certain conditions, including in particular home incarceration and periodic status updates from Taylor's counsel.  (Dkt. #47).

With Taylor's housing situation resolved, the Court returned to the issue of scheduling his plea.  After numerous adjournments occasioned by the

ongoing pandemic, the guilty plea proceeding took place in person on May 5, 2021.  (*See* Plea Tr.).

Taylor's plea was entered pursuant to a written plea agreement between the parties (the "Plea Agreement" or "Plea Agmt." (Dkt. #201-1)).  In the Plea Agreement, the Government agreed to accept a plea to a lesser-included offense of Count One of the Indictment, namely, possession with the intent to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (*Id.* at 1).  That charge specified mandatory minimum terms of 60 months' imprisonment and four years' supervised release.  (*Id.*).  In addition, the parties stipulated that Taylor's range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 121 to 151 months' imprisonment.  (*Id.* at 2-3).  As part of the Plea Agreement, Taylor agreed to waive his right to appeal, or to collaterally challenge, including by means of an application under 28 U.S.C. § 2241 or 28 U.S.C. § 2255, any sentence of imprisonment within or below that range.

During the plea proceeding, the Court began by confirming that Taylor wished to plead guilty to the lesser-included offense of Count One of the Indictment.  (Plea Tr. 2-3).  It then placed Taylor under oath, and asked him questions to determine his competence to plead guilty.  (*Id.* at 5-11).  After finding him competent, the Court reviewed with Taylor the rights that he would be waiving were he to plead guilty (*id.* at 12-18); the elements of the lesser-included offense of Count One and the penalties associated with that offense

(*id.* at 25); and the Plea Agreement pursuant to which he was entering his plea (*id.* at 25-34).  In connection with its review of the Plea Agreement, the Court confirmed with Taylor the specifics of his waiver, including the waiver of his right to appeal or collaterally challenge various components of his sentence. (*Id.* at 30-33).  When asked to explain what he did that made him guilty of the Count One offense, Taylor allocuted that "[o]n February 22nd, 2019, in the Bronx, I possessed more than 40 grams of Fentanyl in the closet of my apartment.  I did so with intent to distribute the Fentanyl.  I knew that what I was doing was unlawful and wrong." (*Id.* at 36).  At the conclusion of the proceedings, the Court accepted Taylor's plea.  (*Id.* at 37).

     **4.**    **The Sentencing**

The Probation Office prepared the PSR for Taylor's sentencing.  In a section addressing Taylor's acceptance of responsibility, the Probation Office related a written statement provided by defense counsel in which Taylor stated in part, "I cannot get into why I did it, but please believe that I was not a drug or gun dealer, although I knew the drugs would be sold.  Still, of course I accept responsibility for keeping these things in my apartment." (PSR ¶ 27).  In its Sentencing Recommendation, the Probation Office recommended a below-Guidelines sentence of 84 months' imprisonment, citing Taylor's age and medical conditions.  (PSR, Sentencing Recommendation).  Taylor filed a sentencing submission requesting a sentence at the statutory mandatory minimum term of 60 months' imprisonment (Dkt. #174), while the Government

filed a sentencing submission requesting a sentence within the stipulated Guidelines range of 121 to 151 months' imprisonment (Dkt. #175).

Sentencing took place on September 15, 2021. (Sent. Tr.; *see also* Dkt. #178 (judgment)). During the sentencing proceeding, the Court asked the parties to address in their sentencing submissions the tension between Taylor's age and medical conditions, on the one hand, and his lengthy criminal history, on the other. (Sent. Tr. 11-12). The Government noted that it had factored Taylor's personal characteristics into the plea offer by which the case had been resolved, but that the offense conduct at issue was "extremely serious" and involved substantial efforts at concealment. (*Id.* at 12-13; *see also id.* at 14 ("The defendant, I think it can't be underscored enough, was found with substantial quantities of drugs, substantial firearms, while he was on parole.")). The defense did not take issue with the Government's assessment of the evidence, except to note that "these are not normal circumstances, that there are factors that, in this case, override that," including Taylor's age, medical conditions, and demonstrated compliance with the conditions of pretrial release. (*Id.* at 22).

The Court also asked the parties to address Taylor's statement accepting responsibility, contained at paragraph 27 of the PSR. The Government elected not to address it, noting that the statement presented "very hard questions," while the offense conduct spoke for itself. (Sent. Tr. 17). Defense counsel added that his answer would not be "satisfying to the Court," since "I don't

8

think we can say more about that in open court or anywhere else than what

has been made." (*Id.* at 22).

After taking a recess to consider the matter, the Court imposed sentence.

After reviewing Taylor's unusual personal circumstances, the Court noted:

> There are very good factors: the fact that you have been compliant on release, the fact that you have family support, the fact that you have done things while you've been incarcerated to better yourself, and that you have some history of legitimate employment when you've been out of jail. There is a — I won't say that this is a good thing, but there are things I must consider: your age and your medical conditions. And I have considered all of those. And then on the other side of the ledger, there is a quite extraordinary, a lengthy, history of criminal conduct, involving drugs and guns and violence. There have been activities committed while on criminal justice sentences. There have been — there is absconding while there's a warrant in place. There are — and there are just — the actual conduct in this case is quite bad. And so I've been thinking about how best to balance those out, the severity of the conduct and the severity of the criminal history, with the countervailing issues regarding age and medical conditions and carceral life in the age of the coronavirus pandemic.

(Sent. Tr. 29-30). Ultimately concluding that the statutory mandatory

minimum term did not adequately capture the seriousness of Taylor's offense

conduct, the Court imposed a sentence of 84 months' imprisonment, followed

by a term of four years' supervised release. (*Id.* at 31-32).

### 5. The Instant Motion

Taylor did not appeal from his conviction or sentence. Instead, while

awaiting his surrender date, Taylor filed a letter dated October 27, 2021,

asking the Court to reconsider the sentence it had imposed. (Dkt. #181). In

support, Taylor now claimed that his apartment had actually been sublet without his consent, and that he had no prior knowledge of the drugs and guns that had been secreted in his closet. (*Id.*). Of note, however, Taylor did not request vacatur of his conviction, but rather resentencing to the statutory mandatory minimum of 60 months' imprisonment or credit against his sentence for past or future periods of home confinement. (*Id.* at 3). The Court appointed counsel for Taylor under the Criminal Justice Act (the "CJA") to advise him "on the appropriate next steps in this case." (Dkt. #182). After consulting with Taylor, counsel requested that the Court *not* deem Taylor's submission to be a compassionate release motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or a habeas petition, but rather a request for certain modifications to his judgment and to the PSR. (Dkt. #189). The Court granted the requests in part. (Dkt. #190).

In May 2022, Taylor requested the appointment of counsel to assist him in making a motion for compassionate release. (*See* Dkt. #191). The Court granted his request by allowing previously-appointed CJA counsel to assist. (*Id.*). However, in August 2022, Taylor filed the instant motion, which he couched as a motion to take judicial notice of certain facts pursuant to Federal Rule of Evidence 201. (Dkt. #192). The Court sought clarification of the motion, which it understood to be a motion pursuant to 28 U.S.C. § 2255. (Dkt. #193). Taylor, through counsel, confirmed the Court's understanding in February 2023. (Dkt. #198, 199).

Taylor filed a supplemental brief in support of his Section 2255 motion in March 2023.  (Dkt. #200).  The Government filed its opposition submission on April 27, 2023.  (Dkt. #201).  Taylor then filed his reply submission in August 2023.  (Dkt. #208).

## DISCUSSION

### A.   Overview of Taylor's Arguments

Read liberally, Taylor's challenges to his conviction distill to the following arguments:

- Officers were not permitted to search his apartment without a warrant, such that the evidence seized should have been suppressed (Def. Br. 1-3; Def. Supp. Br. 1-2; Def. Reply 1-2);

- Taylor received the ineffective assistance of counsel during the pre-plea component of his case, inasmuch as counsel did not (i) conduct an adequate pretrial investigation, (ii) move to suppress, or (iii) object to the pretrial introduction of the seized evidence (Def. Supp. Br. 3);

- Taylor's rights were violated when the Government failed to discuss the waiver of his appellate and collateral challenge rights on the record (Def. Supp. Br. 3-4);

- The Court lacked jurisdiction over Taylor because of violations of his rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution, as evidenced by the Government's failure to read his waiver in open court and the lack of sufficient evidence to convict him (Def. Br. 4-5; Def. Supp. Br. 3-4; Def. Reply 3-4); and

- The PSR and the judgment mistakenly state that Taylor was convicted of a narcotics conspiracy under 21 U.S.C. § 846, when he was in fact convicted of a substantive narcotics offense under 21 U.S.C. § 841(a)(1) (Def. Br. 6; Def. Supp. Br. 3).

Beginning with the final point, the Court agrees with Taylor and the Government that the PSR and the judgment are each incorrect to the extent they reference Section 846, rather than Section 841, as the offense of conviction, and it will order corrections to both documents pursuant to Federal Rule of Criminal Procedure 36.  *See* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").  However, Taylor's other claims must be dismissed, either because (i) they are covered by the waiver provision in his Plea Agreement; (ii) they are procedurally barred; or (iii) they fail on the merits.

### B.   Applicable Law

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).[3]  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal. *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an

---

[3]     The caselaw refers to a person who files a Section 2255 motion alternatively as a "movant," a "petitioner," a "prisoner," or a "defendant."

error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

In resolving a motion under 28 U.S.C. § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also, e.g.*, *Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir. 2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of motions that present facially valid claims).  That said, the filing of a Section 2255 motion does not automatically entitle the movant to a hearing — as, for example, in instances in which a movant's allegations are "vague, conclusory, or palpably incredible."  *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962). Rather, it is within the district court's discretion to determine the scope and nature of a hearing.  *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road [requiring a detailed affidavit from counsel] that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").

**C.      Analysis**

**1.      Taylor's Collateral Challenge Waiver Forecloses Consideration of Certain Claims**

The Court adopts the framework used by the Government for analyzing Taylor's claims, which framework is both logical and legally correct.  To begin, most if not all of Taylor's claims are barred by the collateral challenge waiver he executed as part of his Plea Agreement.  In it, Taylor agreed "not [to] file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 121 to 151 months' imprisonment."  (Plea Agmt. 4).

During the plea proceeding, the Court drew Taylor's attention to the waiver paragraph of the Plea Agreement, and confirmed Taylor's waiver of his right "to appeal or to file a collateral challenge which would include a habeas petition or a motion under Section 2255 of Title 28 of the United States Code, of any sentence of imprisonment within or below the stipulated guidelines range of 121 to 151 months imprisonment."  (Plea Tr. 32).  *See* Fed. R. Crim. P. 11(b)(1)(N) ("During [the plea colloquy], the court must inform the defendant of, and determine that the defendant understands, the following: ... (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]").

It is settled law that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable."  *Sanford* v. *United States*, 841 F.3d 578, 580 (2d Cir. 2016)

14

(collecting cases); *see also Frederick* v. *Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195-96 (2d Cir. 2002) (discussing waiver of collateral attack rights). "[E]xceptions to the presumption of the enforceability of a waiver ... occupy a very circumscribed area of our jurisprudence." *United States* v. *Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000).  For instance,

> [i]n some cases, a defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as [(i)] when the waiver was not made knowingly, voluntarily, and competently, [(ii)] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [(iii)] when the government breached the plea agreement, or [(iv)] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amount[ing] to an abdication of judicial responsibility subject to mandamus.

*Id.* (collecting cases); *cf. Garcia-Santos* v. *United States*, 273 F.3d 506, 509 (2d Cir. 2001) ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into.  The reasons for enforcing waivers of direct appeal in such cases lead us to the same conclusion as to waivers of collateral attack under § 2255." (internal citation omitted)).

That said, courts will "not enforce such a waiver" if "the defendant is challenging the constitutionality of the process by which he waived those rights," such as when "the plea agreement was entered into without effective of assistance of counsel," because it would be a fundamental due process violation if "'the very product of the alleged ineffectiveness'" were "used to bar a claim of ineffective assistance of counsel." *United States* v. *Hernandez*, 242

15

F.3d 110, 113-14 (2d Cir. 2001) (quoting *Jones* v. *United States*, 167 F.3d 1142, 1145 (7th Cir. 1999)) (collecting cases).

Even then, to overcome the waiver, the defendant must present a "meritorious" claim. *United States* v. *Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir. 1997); *see also Muniz* v. *United States*, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) ("[T]he United States Court of Appeals for the Second Circuit has clarified that a waiver of appeal rights does not become unenforceable automatically when a claim of ineffective assistance of counsel at plea is asserted. Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced." (citing *Monzon*)).

Most of Taylor's claims concern the search of his apartment and the specifics of his guilty plea, and do not sound in ineffectiveness. Indeed, even as to the subset of claims that does, Taylor does not claim ineffectiveness in connection with the plea process. Instead, he mounts challenges to the pre-plea investigation and prior counsel's conduct with respect to the evidence seized from his apartment. For this reason, Taylor's claims do not survive the collateral challenge waiver in his Plea Agreement. *See, e.g., United States* v. *Hill*, Nos. 13 Civ. 1107 (LAP), 11 Cr. 145 (LAP), 2014 WL 104565, at *7 (S.D.N.Y. Jan. 7, 2014) (holding that valid waiver bars failure-to-investigate and other pre-plea claims); *United States* v. *Cano*, 494 F. Supp. 2d 243, 248

16

(S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective assistance of counsel … survive § 2255 waivers"); *see also Mitchell* v. *United States*, Case Nos. 14 Civ. 6350 (FPG), 11 Cr. 6019 (FPG), 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors and not the plea process); *Oehne* v. *United States*, No. 14 Civ. 44 (JCH), 2016 WL 10721817, at *11 (D. Conn. Oct. 20, 2016) (finding that "suppression-related claim is barred because it is clearly unrelated to the process by which [the defendant] decided to plead guilty").[4]

### 2.    Taylor's Claims Are Procedurally Barred

Most, if not all, of Taylor's claims are also procedurally barred.  "[A] § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  *United States* v. *Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera* v. *United States*, 972 F.2d 23, 25 (2d Cir. 1992)).  What is more, Section 2255 cannot be used to bring claims for the first time that could have been raised on direct appeal.  *See Bousley* v. *United States*, 523 U.S. 614, 622-23 (1998).  With the exception of claims for ineffective assistance of counsel, *see Massaro* v. *United States*, 538 U.S. 500, 505-06 (2003); *Zhang* v. *United States*, 506 F.3d 162, 166 (2d Cir. 2007), a petitioner who has procedurally defaulted on a claim by failing to raise it on direct appeal, can

---

[4]    To the extent that Taylor's collateral challenge waiver is not enforceable as to any of his ineffectiveness claims, those claims fail on the merits as discussed *infra*.

raise the claim pursuant to Section 2255 only if the petitioner can demonstrate (i) cause for the failure to raise the claim earlier and prejudice from the alleged error, or (ii) actual innocence of the crime.  *Bousley*, 523 U.S. at 622-23.

Cause can be established by showing that the default was the result of "some objective factor external to the defense."  *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate prejudice, the petitioner must show "not just that the errors 'created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.'"  *Borrego* v. *United States*, 975 F. Supp. 520, 522 (S.D.N.Y. 1997) (quoting *United States* v. *Frady*, 456 U.S. 152, 170 (1982)).

Alternatively, a petitioner may show that the federal court's refusal to consider the merits of his claim will result in a fundamental miscarriage of justice, because he is "actually innocent" of the crimes of which he was convicted.  *Aparicio* v. *Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  A court may find that a petitioner is actually innocent only when, after reviewing all of the evidence, it concludes that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Doe* v. *Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (internal quotation marks omitted).

As just noted, the majority of Taylor's claims do not sound in ineffectiveness; these include his claims about the failure to obtain a warrant before searching his apartment; the Government's failure to read Taylor's waiver provision into the record; and the Court's purported lack of jurisdiction over his case.  For these claims, Taylor makes no effort to explain why he

elected not to raise them on direct appeal, and thus he has failed to demonstrate cause.  In any event, and as explained in greater detail in the following section addressing the merits of his claims, Taylor is also unable to demonstrate prejudice.

### 3. Taylor's Claims Fail on the Merits

As it happens, Taylor's claims for vacatur of his conviction also fail on the merits.  Before addressing the claims individually, the Court pauses to note that Taylor's knowing and voluntary guilty plea to Count One would appear to be another impediment to his ability to bring these claims.  That is, a guilty plea "conclusively resolves the question of factual guilt supporting the conviction," so "on collateral attack of a judgment of conviction, ... a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt." *United States* v. *Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam); *see United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir. 1997).  "Rather, a defendant may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards." *Torres*, 129 F.3d at 715-16 (internal quotation marks and citation omitted).

Taylor begins by advancing a number of claims concerning the failure of his parole officer to obtain a warrant before searching his apartment on February 22, 2019; this category of claims includes general discussions of the Fourth Amendment and the warrant requirement, such as the importance of having warrants reviewed by a detached magistrate judge and the requirement

19

of warrant particularity.  (Def. Br. 1-4; Def. Supp. Br. 1-2; Def. Reply 1-2).

Taylor's arguments, however, miss the mark for various reasons.

Both the Supreme Court and the Second Circuit have recognized a

"special needs" exception to the Fourth Amendment's warrant requirement for

parole searches, whereby "a search of a parolee is permissible so long as it is

reasonably related to the parole officer's duties."  *United States* v. *Grimes*, 225

F.3d 254, 259 n.4 (2d Cir. 2000), *cited in United States* v. *Braggs*, 5 F.4th 183,

186-87 (2d Cir. 2021).  These duties include "the supervision, rehabilitation,

and societal reintegration of the parolee, as well as assuring that 'the

community is not harmed by the [parolee's] being at large.'"  *Braggs*, 5 F.4th at

187 (quoting *Griffin* v. *Wisconsin*, 483 U.S. 868, 875 (1987)) (alteration in

*Braggs*).  As explained in its decision denying Taylor's motion to suppress, this

Court found that the information provided by the NYPD to Parole Officer Logan

provided a sufficient factual basis for the parole officers to search Taylor's

apartment.  (Supp. Op. 29-35).  Indeed, the facts of this case are substantively

indistinct from those in *Braggs*, where the Second Circuit found that once the

parole officer "received notice of an anonymous tip suggesting that Braggs had

guns in his possession — a clear violation of his parole conditions — he and

his team were constitutionally permitted to search the house to determine

whether Braggs was complying with the relevant condition."  5 F.4th at 188.[5]

---

[5]     In resolving the suppression arguments made in the instant motion, the Court has not
considered Taylor's post-sentencing assertions that the guns and drugs found in his
apartment in fact belonged to someone else.  (*See, e.g.,* Def. Br. 3; Def. Supp. Br. 2).
For one thing, despite numerous opportunities to make this argument before his
sentencing, Taylor waited until the eve of his surrender date to make this argument.

To the extent that Taylor is claiming that he received the ineffective assistance of counsel with respect to the pre-plea component of his prosecution, his claims also fail. A defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages of the proceeding. In order to succeed on a claim of ineffective assistance of counsel, however, the defendant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984). *First*, the defendant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687-88. During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. *Second*, the defendant must establish that his counsel's errors resulted in actual prejudice. *See id.* at 694. A defendant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

---

(Dkt. #181). And in response to a request for clarification from the Court, Taylor's counsel stated that the letter was neither a compassionate release motion nor a habeas petition. (Dkt. #190). In any event, to the extent Taylor is now claiming that the drugs and firearms were not his, such statements would contravene his Plea Agreement, where he stipulated to the possession of both fentanyl and a firearm (Plea Agmt. 2), and his plea allocution, where he admitted to possessing more than 40 grams of fentanyl in his apartment with the intent to distribute the drug (Plea Tr. 35). *See generally Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Taylor's claims that his prior counsel failed to investigate his case adequately, to file a motion to suppress the evidence seized from his apartment, and to object to the admission of this evidence at the pre-trial stages of the case are either factually incorrect or legally irrelevant.  (Def. Supp. Br. 3).  For starters, prior counsel did investigate the case and did file a substantial, if ultimately unsuccessful, motion to suppress.  Separately, the Court is unaware of any instances, other than the aforementioned motion to suppress, in which it would have been appropriate for counsel to object to this evidence; counsel was, for example, not ineffective in failing to object to the Government's use of this evidence at sentencing, after Taylor's suppression motion had been denied.

Taylor also contests the Government's failure to read the waiver provision of his Plea Agreement in open court — which, Taylor claims, would have confirmed his knowledge and understanding of the Agreement.  (Def. Supp. Br. 3-4).  Importantly, however, the obligation to ensure that Taylor knew and understood the Plea Agreement rested with the Court, which discharged its obligation during the plea proceeding.  (*See* Plea Tr. 25-34; *see also id.* at 30-33 (review of appellate and collateral challenge waiver)).  *See* Fed. R. Crim. P. 11(b)(1)(N) (requiring the court to "inform the defendant of, and determine that the defendant understands … (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"), (c) (setting forth procedures with respect to plea agreements)).

Finally, Taylor argues that this Court lacked jurisdiction to preside over the criminal case and/or to sentence him, either because of the insufficiency of evidence to convict (Def. Br. 3; Def. Reply 3-4), or because the Government failed to read his Plea Agreement waiver into the record (Def. Supp. Br. 3-4). As a general matter, federal courts have subject matter jurisdiction over criminal cases committed or prosecuted within their districts. *See United States* v. *Gonzalez,* 311 F.3d 440, 442 (1st Cir. 2002) ("Article III gives to the federal judicial branch authority-that is, subject matter jurisdiction-over all cases arising under the laws of the United States; and by statute Congress has given the federal district courts this authority over federal criminal cases in the first instance." (citing 18 U.S.C. § 3231 (2000))). With respect to the sufficiency of the evidence, this Court properly found that Taylor's admissions to the elements of the Section 841(a)(1) offense were sufficient to support a plea to that offense. (Plea Tr. 37-38; *see also* Sent. Tr. 5 (noting no objections to the PSR, including its factual recitation)). And with respect to the waiver issue, the Court has already explained why Taylor's rights were protected by the Court's review with him of his Plea Agreement and its attendant waiver provision. For all of these reasons, none of Taylor's arguments for vacatur suffices on the merits.

## CONCLUSION

For the reasons stated above, the Court GRANTS Taylor's motion to correct his PSR and written judgment of conviction pursuant to Federal Rule of Criminal Procedure 36 to reflect the correct offense of conviction, and DENIES Taylor's motion to vacate, set aside, or correct his sentence. Because Taylor has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c). The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at docket entries 192 and 200, and to mail a copy of this Opinion to Taylor at his address of record.

SO ORDERED.

Dated:   October 30, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge